## TEXAS ELECTRIC & ICE CO. v. CITY OF VERNON et al. (No. 2349.)*

(Court of Civil Appeals of Texas. Amarillo. June 25, 1924. Rehearing Denied Oct. 8, 1924.)

1. **Municipal corporations &#9094;887—Commissioners may retransfer moneys from one fund to another where bonds not issued.**

Where city commissioners were authorized in first instance to transfer moneys from a general fund to a special fund, they· can retransfer such moneys to the general fund where no bonds were issued on faith of such action. .

2. **Municipal corporations' &#9094;887 — Evidence held to show apportionment made to special fund from taxes collected for general fund.**

In suit to compel city commissioner to restore moneys diverted from special fund to general fund, evidence *held* to warrant finding that all special levies to meet various bond issues were included in general tax, and that apportionment was made to special funds from general fund when collected.

3. **Municipal corporations &#9094;1000(5) — Evidence held not to warrant enjoining of operation of lighting plant by city.**

In suit to enjoin city from building and operating electric lighting plant on ground that it resulted in overdrawing different funds of city and incurring overdrafts and indebtedness not provided by levy of tax, evidence *held* insufficient to warrant injunction.

Appeal from District Court, Wilbarger County; J. V. Leak, Judge.

Suit by the Texas Electric & Ice Company against the City of Vernon and others. From a judgment for defendants, plaintiff appeals. Affirmed.

See, also, 252 S. W. 255; 254 S. W. 503.

Berry, Stokes & Killough, of Vernon, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Cook, Cook & Cole, Bonner, Storey & Storey, and Harry Mason, all of Vernon, and John D. McCall, of Dallas, for appellees.

BOYCE, J. The Texas Electric & Ice Company filed this suit against the city of Vernon and its commissioners for an injunction to restrain the doing of certain acts in the furtherance of the building and operation of an electric plant by the city, and for mandatory orders to compel the restoration of certain funds alleged to have been unlawfully diverted. The present appeal is from a judgment for the defendants on final trial.

The trial was had· on the same pleadings that were before this court on interlocutory appeal, and for the purpose of this appeal we adopt the statement of the pleadings as made by Judge Randolph in our disposition of that appeal. The law of the case is also largely settled by that opinion and need not

---

be restated here, the questions presented being principally as to the application of the law to the facts shown on the trial. It will be more convenient to omit a general statement of the facts and, instead, make such special statements as are necessary in connection with the various propositions discussed.

[1] Under the first proposition it is claimed that it conclusively appears from the evidence that the defendants had illegally transferred the sum of $2,706.21 from a fund known as the electric light plant bond sinking fund, to another fund, known as the permanent improvement fund, and that the plaintiff is entitled to a judgment providing for a restoration of this money to its proper place. Under the fifth proposition it is urged that plaintiff is entitled to a judgment to enjoin the diversion of $8,000 now in said electric light bond fund. The facts necessary to a disposition of these two propositions are as follows: In January, 1922, the city voted for the issuance of $100,000 of bonds for the purpose of building an electric light plant. On April 13, 1922, the city commissioners enacted an ordinance reading, in part, as follows:

"It is ordained by the city commissioners of the city of Vernon, Tex., that to pay the interest on said bonds and create a sinking fund sufficient to discharge them at maturity a tax of 14.8 cents on each $100.00 valuation of all taxable property in said city of Vernon, Tex., shall be annually levied on said property and annually assessed and collected until said bonds and interest thereon are paid, and said tax is hereby now levied for the current year 1922, and for each succeeding year while such bonds are outstanding and the same shall be assessed and collected for the current year and annually thereafter and applied to the purpose named. And said tax of 14.8 cents on the $100.00 valuation out of a tax of 45 cents levied for the purpose of paying interest and creating a necessary sinking fund for all outstanding bonds heretofore issued by the city for the purpose of constructing or purchasing of public buildings, waterworks, sewers, paving and street improvements and other permanent improvements in the city of Vernon, Tex., by this commission on the 15th day of June, 1921, * * * is hereby appropriated and set aside to pay the interest and create the necessary sinking fund for the current year, and shall be assessed and collected and so applied."

For several years, both before and after the passage of this ordinance, the city had levied a tax "for the purpose of constructing or purchasing of public buildings, waterworks, sewers, paving and improving streets and other permanent improvements in the city of Vernon, Tex." The fund realized from the collection of this tax was known as the permanent improvement fund. This tax was for the years 1919, 1920, and 1922, 50 cents on the $100 valuation of all property in the city; for the year 1921 it was

265 S.W.—12

fixed at 45 cents; and for 1923 at 55 cents. The 14.8-cent tax was not assessed and collected independent of and in addition to the general tax for permanent improvements levied in 1922 and 1923, and if it can be said to have been collected at all, it was merely as a part of the more general levy. A temporary injunction against the issuance of said bonds was granted. Said litigation is still pending and the bonds have not been issued. After the passage of the ordinance of April, 1922, above mentioned, the city secretary opened up an account on his books styled "City of Vernon Electric Light Plant Bond Sinking Fund," and there were thereafter credited to this account two items: One for the sum of $2,706.21, and the other for $8,000. The dates of these credits do not appear, but the mayor of the city testified that the $8,000 was taken out of the permanent improvement fund collected on the 1921 levy. As to the other item he testified:

"The $2,700 was levied during 1922. Mr. Hall (the city secretary) had put that into that fund through error, * * * and we ordered him to transfer it back."

The trial court found that—

"No tax has been directly collected to meet the interest and create a sinking fund for the proposed issue of $100,000 electric light bonds."

We think the evidence sufficient to sustain the conclusion that the collection of the 14.8-cent tax levy to pay interest and create a sinking fund on these bonds was abandoned, pending the determination of the suit to test the validity of the proposed bond issue. The same tax for permanent improvements was collected in 1922 as had been levied for years before. Apparently it had already been levied at the time of the levy of the 14.8-cent tax. So that there was no additional collection made by reason of the levy of the last-named tax. We think the court was justified in finding that no wrong was committed by the transfer of the $2,700 back to the permanent improvement fund. The $8,000 which was put in the electric light plant sinking fund was certainly not collected by virtue of the levy of the 14.8-cent tax levy, but by levy of the 45-cent permanent improvement tax which had been levied and collected for the year 1921 prior to the ordinance of April, 1922. If the commissioners had the right in the first instance to take such moneys out of the permanent improvement fund, they have the right, we think, to retransfer them to that fund, at least in the absence of a sale of the bonds on faith of such action. We therefore overrule the first and fifth propositions.

[2] Under the second proposition it is contended that the appellant was entitled to judgment providing for the restoration to a fund known as the street improvement se-

ries No. 4 bond fund of the sum of $2,250, alleged to have been wrongfully diverted therefrom to the permanent improvement fund. It appears that in 1919 a bond issue known as street improvement series No. 4 had been voted. The city had not been able to sell these bonds, and on December 13, 1922, the commissioners entered an order which, after reciting that the permanent improvement bond had theretofore advanced and loaned to the street improvement fund the sum of $13,000, transferred to the permanent improvement fund $13,000 in bonds of said issue. These bonds were about this time delivered to Fairbanks-Morse & Co., in part payment for certain engines mentioned in our former opinion. At such time there were past-due interest coupons attached to the bonds, amounting to the sum of $2,250. These coupons were, before the delivery to the Fairbanks-Morse & Co., detached and paid by credit of such amount to the permanent improvement fund and charged to the account of the street improvement fund; there being moneys to the credit of this latter account realized from the collection of taxes levied at the time of the issuance of the bonds to pay interest and create a sinking fund. During the years 1919, 1920, and 1921, warrants for street paving, amounting to about $14,000, had been paid out of the permanent improvement fund on contract entered into by the city shortly after the time of the voting of said bonds for such street paving. The testimony is, we think, sufficient to support the conclusion which the court reached in substance that these bonds were voted for the purpose of paving streets that were paved under the contract mentioned, and that such contract was entered into with expectation of payment out of the funds derived from the sale of the bonds; that by reason of the city's inability to sell the bonds, funds were not available in the street paving fund for paving as the work progressed; and that under these circumstances warrants to cover the cost of such paving were drawn against the permanent improvement fund, "it being the purpose of said city commission at said time to reimburse said permanent improvement fund from the sale of said bonds when the same could be sold at par and accrued interest." No order appears in the minutes of the proceedings of the city commissioners to show that the money was advanced out of the permanent improvement fund as a loan to the street paving fund. Appellant argues from this fact, and from the further fact that one of the stated purposes of the tax levy which produced the permanent improvement fund was the "paving and improvement of streets," as stated in the first proposition, that it conclusively appears that the payment for the paving was properly made out of this fund, and that the matter of a loan from one fund

to another was an afterthought and a subterfuge. The record does not show the amount of the tax levied to pay the $15,000 of street improvement bonds of No. 4 issue. It is a reasonable conclusion from the evidence that all the special levies to meet the various bond issues were included in the general tax ranging from 45 to 55 cents on the $100 valuation, as stated in connection with the first proposition discussed, and that apportionment was made to the special funds from this more general fund when collected. So that it does not appear unreasonable to say that the levy for paving and improving of streets as included in the general levy for permanent improvements was merely intended to cover and include the special levies that were made for the purpose of meeting the various bond issues for street paving. We cannot say that the trial court was not warranted in his finding, and therefore overrule this proposition.

[3] The third proposition asserts that—

"Under the evidence in this case the plaintiff was entitled to an injunction restraining the defendants from overdrawing the different funds of the city and from incurring overdrafts and indebtedness which was not provided for by the levy of tax and which could not be paid out of the current revenues for the present fiscal year ending March 21, 1924."

The specific basis for this proposition is that it appears that the city had expended about $90,000 in the erection of a water and light plant, having gone largely in debt, illegally appellant asserts, for such purposes, and having illegally, it is alleged, diverted special funds to the permanent improvement fund for the purpose of paying on this project; that such project is not complete; and that defendants, unless enjoined, will continue to incur illegal indebtedness and make illegal transfers of specials funds in order to complete the work. The evidence does show the expenditure of the sum of about $90,000 for the purpose stated. $40,000 of this amount was covered by refunding warrants which appellant asserts created an illegal debt. There is a suit pending contesting the validity of these warrants, and we do not now express an opinion as to such matter. We have already noticed the other alleged illegal means used for the purpose of meeting the expenditures already made. In addition to this and such money as was available out of the general fund and the permanent improvement fund, the city used $10,000 of money derived from the sale of waterworks bonds; there being no question as to this last item. At the time of the trial there were outstanding warrants against the general fund aggregating something over $5,000, with nothing to the credit of the said fund. There were also warrants out against the water and sewer fund amounting to about $9,000, with nothing to

the credit of said account. It also appears that there were bills, not yet allowed but outstanding, for electrical supplies, etc., amounting to several thousand dollars. The trial was in October, before taxes for the year had been paid to any considerable extent. The lighting plant was in operation, but other improvements and extensions were in contemplation. The evidence is not, however, definite as to the amount of money that would be necessary to make these improvements and extensions. The mayor testified that the net income from the water and light plant available for extensions and improvements would be from $16,000 to $18,000 per annum. It was also in evidence that the annual income in the general fund would exceed the expenses by from $6,000 to $7,000. The mayor testified that—

"Out of the revenues of the waterworks and electrical system as it now is, we can pay the expenses of those systems and continue improvements in a moderate way and that is the course we are now pursuing."

The trial court found:

That "the city commissioners are engaged in making extensions of its electric lighting system as fast as they can procure funds legally available for the purpose and that they intend to appropriate surplus revenue which they receive from the operation of its water, sewer and electric lighting systems for that purpose; that the defendants do not intend to misapply or divert any of the funds belonging to said city or use any funds which are not available under the law for that purpose, to the extension of its electric lighting system; that the city commissioners have not issued overdrafts in excess of the constitutional limit and do not intend to do so in the future."

Evidence was introduced to the effect that the lighting system is operated in connection with the waterworks system which the city was operating before it installed the light feature; that it can operate the two systems in conjunction more economically than either one could be operated alone; and that such operation is producing a profit. As to the question of validity of the overdrafts of the past, referred to in the court's finding above, we express no opinion at this time. We are of the opinion that the evidence is sufficient to sustain the other part of the finding, and overrule this proposition.

Section 12 of the city franchise, adopted in 1916, is as follows:

"In the event said city of Vernon shall acquire by purchase, gift, devise, deed, condemnation or otherwise, any waterworks system, electric plant or power system, gas system, street railway system, telephone system or other public service utility, to operate and maintain for the purpose of serving the inhabitants of said city, the right to operate and maintain such public service utility so acquired shall be exclusive."

It was alleged in the petition that the plaintiff is the owner of a franchise to operate a light plant in the city of Vernon granted in the year 1913 for the period of 50 years thereafter, and that it is operating a plant in said city under such franchise; that the city has no right to operate a plant since such right cannot, under the facts, be exclusive; that the operation of a competitive plant by the city will be a great expense and entail a loss; that the plaintiff, a taxpayer, has the right to enjoin the further expenditure of funds for such illegal purpose. The eighth proposition contends that the court should have granted an injunction on this ground. There was no direct evidence adduced on the trial that any one has a franchise to operate a light plant in the city. The only evidence appellant refers to in this connection consists of a statement by the witness of comparative rates charged by the city and by the plaintiff for electrical service; but no reference whatever is made to a franchise or its terms under which the plaintiff may be furnishing such service. The evidence, as already stated, tends to show that the operation of the plant is producing a profit instead of a loss. Whatever may be the correct construction of the language of the ordinance quoted and the resultant rights of the parties thereunder, if the allegations of the petition be true, the evidence presents no case for injunction on this ground.

What we have said in disposition of the propositions already discussed is sufficient to dispose of the other propositions, and we overrule them.

We find no reversible error presented, and the judgment is therefore affirmed.